O

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KALE KEPEKAIO GUMAPAC and DIANNE LEE GUMAPAC,<br><br>    Plaintiffs,<br>    v.<br>DEUTSCHE BANK NATIONAL TURST COMPANY, AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT SECURITIES, INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-W2; DEUTSCHE BANK NATIONAL TRUST COMPANY, N.A., AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT SECURITIES, INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-W2; DEUTSCHE BANK NATIONAL TRUST COMPANY, LLC.; ARGENT SECURITEIS; and DOES 1–10,<br><br>    Defendants. | Case No. 2:11-cv-10767-ODW (CWx)<br><br>**Amended Order GRANTING Defendants' Motions to Dismiss [20, 41]** |

## I. INTRODUCTION

Before the Court are (1) Defendants Deutsche Bank National Trust Company, as Trustee for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2006-W2 and Deutsche Bank National Trust Company, LLC's Motion to Dismiss

Plaintiffs Kale Kepekaio Gumapac and Dianne Lee Gumapac's First Amended Complaint ("FAC"); and (2) Defendants Argent Mortgage Company, LLC ("Argent Mortgage") and Argent Securities Inc.'s (collectively with Argent Mortgage, the "Argent Defendants") Motion to Dismiss Plaintiffs' FAC. (ECF Nos. 20, 41.) Having carefully considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the reasons discussed below, the Court **GRANTS** Defendants' Motions.

## II.  FACTUAL BACKGROUND

On April 17, 2002, Plaintiffs purchased the property located at 15-1716 Second Avenue, Keaau, Hawaii 96749 (the "Property") from Linda and Alice Little. (FAC ¶¶ 2, 18.) A warranty deed evidencing the transfer from the Littles to Plaintiffs was registered in the Office of Assistant Registrar on February 24, 2003. (FAC ¶ 21.)

On December 12, 2005, Plaintiffs executed a promissory note to obtain a $290,000.00 loan secured by a mortgage on the Property in favor of Argent Mortgage. (FAC ¶¶ 22, 23.) As a condition of the loan, Plaintiffs were required to obtain property title insurance on the Property to insure against any title defects. (FAC ¶ 24.) One provision of the title insurance policy informs the crux of Plaintiffs' entire complaint: under the policy, the insured—identified as Argent Mortgage on December 19, 2005 (FAC Ex. 1 Ecl. 1 Ex. E)—was obligated to provide prompt written notice to the insurer (Stewart Title Company) upon learning of a potential title defect in the property. (FAC ¶¶ 44, 45.) While Plaintiffs contend that they "were the beneficiaries of the Title Guaranty Policy" (FAC ¶ 26), they also allege that the title insurance was "for the benefit of Lender Defendant Argent Mortgage" and that the "Stewart Title Policy provides coverage for defect in title for insured Lender Defendant Argent Mortgage" (FAC ¶¶ 24, 27).

On February 1, 2006, Argent Mortgage securitized its interest in the Property to the Agent Securities Inc. Asset-Backed Pass-Through Certificates, Series 2006-W2

securitized trust (the "Trust") by a Pooling and Service Agreement ("PSA"); Deutsche Bank National Trust Company ("Deutsche Trust Company") was designated as trustee of the Trust. (FAC ¶¶ 33, 34.) According to Plaintiff, Section 2.03 of the PSA "require[d] the Defendants to take affirmative action when there [was] notice of any defect of title relating to mortgage instruments which comprise the 2006 W2 Certificates, which includes the Gumapac Mortgage." (FAC ¶ 37.)

On February 11, 2009, Argent Mortgage executed an Assignment of Mortgage selling and transferring its interest in the Property to Deutsche Trust Company, "as trustee for" the Trust. (FAC ¶ 46 & Ex. 2.) The assignment was recorded on March 9, 2009. (FAC ¶ 46 & Ex. 2.)

On August 7, 2009, Deutsche Trust Company executed a second Assignment of Mortgage, transferring its interest to "Deutsche Bank National Trust Company, *a National Banking Association* as Trustee in trust for the benefit of" the Trust ("Deutsche Bank"). (FAC ¶ 54 & Ex. 3 (emphasis added).)

On August 3, 2010, following Plaintiffs' default on their mortgage, Deutsche provided Plaintiffs a Notice of Mortgagee's Intention to Foreclose Under Power of Sale. (FAC ¶ 56.) "Due to the confusion of various entities claiming rights and responsibilities to the Subject Property under the Gumapac Mortgage, the Pooling Agreement, insurance obligations . . . and possibly other legal documents and or unknown transfers," Plaintiffs subsequently retained Hawaiian Alliance to investigate possible title defects. (FAC ¶ 57.)

On January 13, 2011, Deutsche Bank purchased the Property at an non-judicial foreclosure auction. (FAC ¶ 58.) Following this purchase, Deutsche Bank quitclaimed the Property to itself by a January 27, 2011 Mortgagee's Quitclaim Deed Pursuant to Power of Sale, which Deutsche recorded on February 3, 2011. (FAC ¶ 61 & Ex. 4.)

Meanwhile, on January 21, 2011 (after foreclosure but before Deutsche Bank recorded its quitclaim deed), Hawaiian Alliance issued a Title Claim Report for Plaintiffs' Property, which revealed that

> based on Hawai'i Alliance's title search of the Subject Property, *there was a defect of title* 'by virtue of an executive agreement entered into between President Grover Cleveland of the United States and Queen Lili'uokalani of the Hawaiian Kingdom whereby the President and his successors in office were and continue to be bound to faithfully execute Hawaiian Kingdom law by assignment of the Queen's [powers/interests] under threat of war on January 17th 1893.'

(FAC ¶ 59 (emphasis and brackets in original).) According to the report, this executive agreement between President Cleveland and Queen Lili'uokalani rendered the notaries public in the Hawaiian Islands and the registrar of the Bureau of Conveyances unlawful since January 17, 1893, which in turn nullified the deed of conveyance in the Property to Plaintiffs because it was "not lawfully executed in compliance with Hawaiian Kingdom Law." (FAC ¶ 59 (quoting Ex. 1).) Plaintiffs further contend that Deutsche National Bank's Mortgagee's Quitclaim Deed "is invalid and void" as a result of the title defect identified in the Title Claim Report and certain other notarization deficiencies. (FAC ¶ 62.)

On February 9, 2011, Deutsche Bank filed a Complaint for Ejectment in Hawaii state court. (FAC ¶ 65.) On April 29, 2011, Plaintiffs filed a motion to dismiss the ejectment action, arguing that the title report had unearthed a title defect undermining Deutsche Bank's interest in Plaintiffs' property. (FAC ¶ 68.) According to Plaintiffs, this motion to dismiss served as notice to Deutsche Bank of a title defect sufficient to trigger its responsibility under the title insurance policy to notify Stewart Title of the defect. Plaintiffs also allege that they formally notified Deutsche Bank of the supposed title defect again, this time by letter, on November 22, 2011. (FAC ¶ 74.) Despite receiving such notice, Deutsche National Bank "did not provide any notice of

1 claimed title defect to insurance carrier, Stewart Title or as required under the Pooling
2 Agreement." (FAC ¶ 75.)
3      As a result of these facts and contentions, Plaintiffs filed a Complaint in this
4 Court on December 29, 2011. On February 27, 2012, the Court dismissed Plaintiffs'
5 Complaint for lack of diversity jurisdiction following Plaintiffs' failure to oppose the
6 Deutsche Defendants' February 8, 2012 motion to dismiss. (ECF No. 15.) Plaintiffs
7 filed their FAC on March 13, 2012, which corrected the jurisdictional defect and
8 alleged three claims for (1) breach of contracts; (2) declaratory relief; and (3)
9 deceptive trade practices. (ECF No. 19.) The Deutsche Defendants moved to dismiss
10 the FAC on March 29, 2012, and the Argent Defendants moved to dismiss on May 8,
11 2012. (ECF Nos. 20, 41.) The Court will now consider both Motions.

### III. LEGAL STANDARD

Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement—to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); Fed. R. Civ. P. 8(a)(2). For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While specific facts are not necessary so long as the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Iqbal*'s plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Rule 8 demands more than a complaint that is merely consistent with a defendant's liability—labels and conclusions, or formulaic

recitals of the elements of a cause of action do not suffice. *Id.* The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When considering a Rule 12(b)(6) motion, a court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Conclusory allegations, unwarranted deductions of fact, and unreasonable inferences need not be blindly accepted as true by the court. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Yet, a complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts" supporting plaintiff's claim for relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. DISCUSSION

Defendants move to dismiss Plaintiffs' entire FAC. The Court first addresses Plaintiffs' standing to assert a claim arising out of an alleged violation of the PSA, followed by consideration of Plaintiffs' claims for breach of contract, declaratory relief, and deceptive trade practices.

### A. Plaintiffs Lack Standing to Assert Claims Arising Out of the PSA

Plaintiffs' first and second claims for breach of contract and declaratory relief, respectively, are based in part on Defendants' alleged failure to comply with certain provisions of the PSA. (FAC ¶¶ 87 ("Defendants Deutsche Bank Trustees have also

breached their duty under Section 2.03 of the Pooling Agreement . . . ."), 95 ("A real and actual controversy has arisen and now exists between Plaintiff and Defendants as to . . . whether Defendants must provide notice as required under Section 2.03 of the Pooling Agreement . . . .")  However, Courts have resoundingly rejected mortgagor claims predicated on contentions that a party to the securitization process failed to adhere to the PSA, reasoning that the mortgagor is not a party to the PSA and thus lacks standing to assert such claims. *Rodenhurst v. Bank of Am.*, 773 F. Supp. 2d 886, 899 (D. Haw. 2011) ("The overwhelming authority does not support a [claim] based on improper securitization."); *Cooper v. Bank of N.Y. Mellon*, No. 11-00241 LEK-RLP, 2011 WL 3705058, at *17 (D. Haw. Aug. 23, 2011) (dismissing breach of contract claim brought by delinquent mortgagors for breach of the PSA because mortgagors were not third-party beneficiaries of PSA and thus lacked standing to enforce its terms); *Abubo v. Bank of N.Y. Mellon*, No. 11-00312 JMS-BMK, 2011 WL 6011787, at *8 (D. Haw. Nov. 30, 2011) (noting that a third party lacks standing to raise a violation of a PSA); *see also Bascos v. Fed. Home Loan Mortg. Corp.*, No. CV 11-39680-JFW (JCx), 2011 WL 3157063, at *6 (C.D. Cal. July 22, 2011) ("Plaintiff has no standing to challenge the validity of the securitization of the loan as he is not an investor of the loan trust."); *Greene v. Home Loan Servs., Inc.*, 2010 WL 3749243, *4 (D. Minn. Sept. 21, 2010) ("Plaintiffs are not a party to the [PSA] and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement."); *In re Correia*, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011) (rejecting argument by debtors that mortgage assignment was invalid based on noncompliance with the PSA, as debtors were neither parties, nor third party beneficiaries, of the PSA).  This conclusion is bolstered by the language of the PSA itself.[1]  Section 11.03 of the PSA provides:

---

[1] While Plaintiffs do not attach a copy of the PSA to the FAC, Plaintiffs reference the PSA repeatedly throughout their FAC, and neither party appears to contest the authenticity of the PSA in this case.  The Court therefore takes judicial notice of the PSA governing the Argent Securities Inc.,

> No Certificateholder shall have any right by virtue of any provision of this Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement, unless (i) such Holder previously shall have given to the Trustee a written notice of default and of the continuance thereof, as hereinbefore provided, and (ii) the Holders of Certificates entitled to at least 25% of the Voting Rights shall have made written request upon the Trustee to institute such action, suit or proceeding in the name of the Trustee hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee, for 15 days after its receipt of such notice, request and offer of indemnity, shall have neglected or refused to institute any such action, suit or proceeding.

Asset-Backed Pass-Through Certificates, Series 2006-W2, Pooling and Service Agreement § 11.03 (Feb. 1, 2006), *available at* http://www.sec.gov/Archives/edgar/data/1353319/000088237706000783/d442487_ex4-1.htm.

True, Plaintiffs are mortgagors, and not certificate holders in the securitized trust; however, as mortgagors Plaintiffs have a far more remote legal interest in the securitized trust than the certificate holders who have invested in the trust. Thus, it stands to reason that if the certificate holders cannot institute suit under a provision of the PSA absent written demand on the trustee by 25% of the certificate holders to institute such an action, then Plaintiffs alone certainly could not institute an action for violation of a provision of the PSA. Plaintiffs thus have no standing to assert their first and second claims against any Defendant to the extent that those claims rely on

---

Asset-Backed Pass-Through Certificates, Series 2006-W2, available on the Securities and Exchange Commission's EDGAR database at http://www.sec.gov/Archives/edgar/data/1353319/000088237706000783/d442487_ex4-1.htm. *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998) (A "district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies.")

allegations pertaining to the PSA. The Court will therefore confine its proceeding discussion to Plaintiffs' claims as they relate to the Stewart Title Policy.

## B. First Claim for Breach of Contract

Plaintiffs' first claim for breach of contract alleges that "Defendants [*sic*] Deutsche Bank Trustee's failure to provide notice of a claim of title defect to Stewart Title is a breach of its Covenant and agreement with Plaintiffs under the Gumapac Mortgage, Section 5."[2] The Argent Defendants argue that Plaintiffs' breach-of-contract claim fails as against them because "the Argent Defendants assigned all interest in the loan and the property to Deutsche Bank, and is no longer 'insured' under the title insurance policy." (Argent Mot. 8.) The Deutsche Defendants contend that Plaintiffs lack standing to assert this claim because (1) Plaintiffs are not intended third-party beneficiaries of the Stewart Title Policy; and (2) the Policy was extinguished at the time of foreclosure. (Deutsche Mot. 13.)

The Court agrees that the Argent Defendants are not proper defendants with respect to Plaintiffs' breach-of-contract claim because they transferred their entire interest in the Property to Deutsche Trust Company by the February 11, 2009 Assignment of Mortgage. (FAC ¶ 46 & Ex. 2.) Indeed, the operative provisions of Plaintiffs' breach-of-contract claim appear to recognize that the Deutsche Defendants are the only proper Defendants under this claim. (FAC ¶¶ 77("Defendants Deutsche Bank National Trustees . . . will not comply with [their] contractual obligations to provide notice of defect in title to Stewart Title . . . ."), 86 ("Defendants Deutsche Bank Trustee's failure to provide notice of a claim of title defect to Stewart Title is a

---

[2] The Court notes that section 5 of Plaintiffs' mortgage requires Plaintiffs to maintain *property* insurance to insure "against loss by fire, hazards included in the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods." (FAC Ex. 1, Enclosure 1, Ex. D, at 6.) However, the crux of Plaintiffs' claim is that Deutsche Bank failed to give notice to Stewart Title of an alleged title defect as required by Plaintiffs *title* insurance policy. Thus, the Court confines its analysis to Plaintiffs' title insurance policy and disregards those allegations pertaining to section 5 of their mortgage.

breach of its Covenant . . . .").)  Accordingly, the Court **GRANTS** the Argent Defendants' Motion with respect to this claim.

The Court turns now to Plaintiffs' third-party beneficiary status under the Stewart Title Policy.  Third parties generally do not have enforceable contract rights unless the third party was an *intended* third-party beneficiary of the contract.  *Cooper v. Bank of N.Y. Mellon*, No. 11-00241 LEK-RLP, 2011 WL 3705058, at *17 (D. Haw. Aug. 23, 2011) (citing *Ass'n of Apartment Owners of Newtown Meadows ex. rel. its Bd. of Dirs. v. Venture 15, Inc.*, 115 Haw. 232, 269 (2007)).  An intended third-party beneficiary has standing to enforce only contract provisions from which it is intended to benefit.  *Id.*

The third party bears the burden of establishing that it was in fact an intended third-party beneficiary.  It is not enough that the parties to a contract "know, expect, or even intend that [known third parties] *may* benefit or that [those third parties] are referred to in the contract.  Rather, there must be evidence that the contracting parties *intended* to confer a *direct* benefit to the third party."  *Id.* (emphasis added) (citation omitted) (internal quotation marks omitted).  In addition, "Hawai'i courts . . . are reluctant to find intended third-party beneficiary status absent a clear recognition of the third party and the conferred benefit."  *Id.* (citing *Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship*, 115 Haw. 201, 215 n.15 (2007); *Pancakes of Haw., Inc. v. Pomare Props. Corp.*, 85 Haw. 300, 309 (Ct. App. 1997)).

Plaintiffs' FAC fails to carry Plaintiffs' burden of establishing they were intended beneficiaries of the title insurance policy.  Moreover, the title policies attached to Plaintiffs' FAC makes abundantly clear that Plaintiffs were not in fact intended beneficiaries of the insurance policy.  Plaintiffs attach a copy of the applicable Hawaii Standard Owner's Policy (1998) to their FAC.  (FAC Ex. 1, Enclosure 1, Ex. F.)  That Policy states that it "insures, as of the Date of Policy shown in Schedule A, against loss or damage not exceeding the amount of the insurance stated in Schedule A, sustained or incurred *by the insured* by reason of . . . (2) Any

defect in or lien or encumbrance on the title." (*Id.*) The Policy then defines the "insured" as "the insured named in Schedule A."

Plaintiffs' FAC contains two documents titled "Schedule A." The first bears Policy Number T76-000020391 and a Policy Date of February 24, 2003. (*Id.*) This Schedule A lists the "Name of Insured" as "KALE KEPEKAIO GUMAPAC and DIANNE DEE GUMAPAC, husband and wife, as Tenants by the Entirety, as Fee Owner." (*Id.*) The second Schedule A bears Policy Number M-9994-8370850 and Policy Date December 19, 2005. (FAC Ex. 1, Enclosure 1, Ex. E.) This Schedule A lists the insured as "AGENT MORTGAGE COMPANY, LLC, a Limited Liability Company, organized and existing under the laws of Delaware." (*Id.*)

Were the former Schedule A the operative schedule, then Plaintiffs may, barring other issues discussed below, have a viable breach-of-contract claim. But the face of Plaintiffs' FAC specifically identifies Policy Number M-9994-8370850, which they aver was dated December 12, 2005. (FAC ¶ 25.) Thus, the latter schedule is the operative schedule, and Argent is the operative insured. No provision of the Policy indicates that the Policy was intended to benefit—either directly or indirectly—any party other than the insured. (*See* FAC Ex. 1, Enclosure 1, Ex. F.) Accordingly, the Court finds that Plaintiffs were not intended beneficiaries of the Title Insurance Policy as a matter of law.

Plaintiffs' breach-of-contract claim fails as a matter of law for another reason: Plaintiffs gave notice of the alleged title defect only *after* completion of the foreclosure sale, and thus after termination of the title insurance policy. The Stewart Title Policy in this case terminated upon Deutsche Bank's foreclosure. *E.g.*, *Morrison v. Wells Fargo Bank, N.A.*, 711 F. Supp. 2d 369, 389 (M.D. Pa. 2010) (agreeing with third-party defendant Stewart Title that when lender foreclosed, mortgage was satisfied and, therefore, Stewart's obligations under the policy ended); *Willow Ridge Ltd. P'ship v. Stewart Title Guaranty Co.*, 706 F. Supp. 477, 486 (S.D. Miss. 1988) ("[O]nce [Plaintiff] lost title to the property through foreclosure, it no longer had any

1  legal interest in the property and the policy was rendered ineffective."); *Gebhardt*
2  *Family Investment, L.L.C. v. Nations Title Ins. of N.Y., Inc.*, 132 Md. App. 457 (2000)
3  (once landowners lost interest in property, landowners lost coverage under title policy
4  covering property and could not sue insurer to remedy cloud on title to part of
5  property that existed before losing interest). Plaintiffs allege that they had defaulted
6  on their mortgage by August 3, 2010; that Deutsche Bank purchased the property at a
7  non-judicial foreclosure auction on January 13, 2011; and that Deutsche Bank
8  subsequently quitclaimed the Property to itself on January 27, 2011. Nevertheless,
9  Plaintiffs allege that the earliest date they gave notice to Deutsche Bank of the
10 purported title defect (in the form of a motion to dismiss Deutsche Bank's February 9,
11 2011 Complaint for Ejectment) was April 29, 2011—more than three months after
12 Deutsche Bank had conclusive title to Plaintiffs' property. *See Aames Funding Corp.*
13 *v. Mores*, 107 Haw. 95, 102 (2005) ("[Hawaii Revised Statutes section 501-118]
14 indicates that conclusive effect is to be given the certificate of title on the question of
15 title to land.") Therefore, Plaintiffs gave notice to the title insurer of an alleged title
16 defect only *after* the Stewart Title Policy had been extinguished.
17      Because Plaintiffs were not intended third-party beneficiaries of the Stewart
18 Title Policy, and because Plaintiffs failed to tender notice of any potential title defect
19 prior to termination of the Policy, Plaintiffs' breach of contract claim (as alleged
20 against the Deutsche Defendants) fails as a matter of law. Accordingly, the Court
21 **GRANTS** the Deutsche Defendants Motion with respect to Plaintiffs' first claim,
22 which is hereby **DISMISSED WITH PREJUDICE**.
23 **C.   Second Claim for Declaratory Relief**
24      Plaintiffs' second claim for declaratory relief seeks "a declaration that the Title
25 Claims Report provided notice to Defendants that there is a claim for a defect of title
26 on the Subject Property relating to the Gumapac Mortgage" and "that the Defendants
27 must forward the notice of claim to the Defendant's title insurer." (FAC ¶¶ 96–97.)
28 Plaintiff's second claim fails for at least two reasons.

First, the alleged title defect Plaintiffs allege is premised on the notion that Plaintiffs' deed of conveyance in the Property was invalid because it was not lawfully executed in compliance with Hawaiian Kingdom Law. But the Ninth Circuit, the District Court for the District of Hawaii, and various Hawaii state courts "have rejected similar arguments based on the continued sovereignty of the Kingdom of Hawaiʻi." *Uy v. Wells Fargo Bank, N.A.*, No. No. 10–00204 ACK–RLP, 2011 WL 1235590, at *5 n.16 (D. Haw. Mar. 28, 2011) (slip copy) (citing *Baker v. Stehura*, No. 09-00615 ACK-BMK, 2010 WL 352 8987, at *4–5 (D. Haw. Sept. 8, 2010)). Thus, Plaintiffs' claim that a title defect exists at all is directly contrary to established law, despite Plaintiffs' ardent objections to the contrary.

Second, as discussed above, Plaintiffs lack standing to enforce provisions of the Stewart Title Policy because they were not intended third-party beneficiaries of the policy, and in any event "Plaintiffs have no legally cognizable interest in a policy of title insurance that was between Stewart Title and its insured" because the mortgage has been extinguished by foreclosure. (Deutsche Mot. 15.) For these reasons, the Court **GRANTS** Defendants' Motions with respect to Plaintiffs' second claim, which is hereby **DISMISSED WITH PREJUDICE**.

**D.    Third Claim for Deceptive Trade Practices**

Plaintiffs' claim for deceptive trade practices urges that Plaintffs are entitled to an order voiding the mortgage quitclaim deed and a permanent injunction preventing Plaintiffs from ever being evicted from the property. (FAC ¶ 100.) This request is curious, given that under Plaintiffs' fanciful Kingdom of Hawaii theory, Plaintiffs themselves do not hold valid title to the property any more than any Defendant in this action. Nevertheless, the Court will briefly address the merits of Plaintiffs' claim.

Plaintiffs' deceptive trade practices claim is based on an alleged "unfair and deceptive business practice where [Defendants] require potential borrowers to purchase title insurance through a title company" at the time the loan is consummated, but then fail to make a claim to the title insurer "despite notice of claimed defects in

title." (FAC ¶ 106.) But the Argent Defendants cannot be held liable for this alleged unfair practice as a matter of law because they assigned away all of their interest in Plaintiffs' loan by the February 6, 2011 Assignment of Mortgage, long before Plaintiffs alerted any Defendant to a potential title defect. And the Deutsche Defendants cannot be held liable for such practices because neither Deutsche Defendant was the originating lender that insisted on the title insurance. *Young v. Bank of N.Y. Mellon*, No. 10-00017 JMS-BMK, 2012 WL 262640, at *8 (D. Haw. Jan. 30, 2012) (slip copy); *Rodenhurst v. Bank of Am.*, 773 F. Supp. 2d at 896 ("[Section] 480-2 liability does not attach merely because one is an assignee.") Accordingly, Plaintiff's claim for deceptive trade practices fails as a matter of law against all Defendants. Defendants' Motions with respect to this claim are therefore **GRANTED**, and Plaintiff's third claim is **DISMISSED WITH PREJUDICE** against all Defendants.

## V.   CONCLUSION

For the reasons discussed above, Defendants' Motions to Dismiss Plaintiffs' FAC are **GRANTED** in their entireties. Given the inherent flaws in Plaintiffs' claims for relief, the Court finds that additional attempts at amendment would be futile. This case is therefore **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

July 30, 2012

_____
**HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**